UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN DOE,

        Petitioner,

    v.

CHRISTOPHER CHESTNUT, et. al.,

        Respondents.

No.  1:26-cv-02229-TLN-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee who is proceeding with counsel, filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  See ECF No. 14. Respondents filed an answer, ECF No. 15, Petitioner filed a reply, ECF No. 17.

**I. BACKGROUND**

Petitioner contends he is a citizen of El Salvador "with pending applications for deferral of removal under the Convention Against Torture and a U Visa." ECF No. 14, pg. 2. According to Petitioner, he "first came to the United States around age 14," and "joined the MS-13 gang to gain protection from other gang members who harassed him and beat him up at his high school." Id. Petitioner asserts that

> He has spent the majority of his life trying to undo that decision. Today, Petitioner has not participated in the MS-13 gang in nearly two decades. In the years prior to his re-detention by the DHS, Petitioner was steadily employed, taking English as a

1

Second Language classes, and deeply involved in the Seventh Day Adventist Church in San Mateo, California. Petitioner was undergoing laser removal treatments to remove his MS-13 gang tattoos, as he was eager to remove the marks of his past, even if it meant making himself a target of MS-13's violence.

Id.

According to Petitioner, he left MS-13 and therefore was repeatedly threatened and beaten by MS-13 members which resulted in Petitioner attending MS meetings throughout late 2007. See id. at 8. Petitioner concedes he was arrested in October 2008, for "conspiracy to commit robbery, murder, and racketeering, along with over 20 other defendants with MS ties." Id. Petitioner asserts that the charges against him

were based on the facts that he had joined MS as a teenager around 1996 and was aware of some of MS's plans to commit crimes—specifically, Petitioner had heard other MS members discuss attacking rival gang members and planning the robbery of a store. Petitioner didn't plan to participate in these crimes, but he acknowledges that he listened to other MS members talking about them and didn't try to stop them.

Id. at 9 (internal citations omitted).

Petitioner contends that he pled guilty to the charges, was released from prison in 2015 and was then deported to El Salvador. See id. Petitioner asserts that, due to threats and violence against Petitioner by the police in El Salvador, Petitioner "fled El Salvador around late 2019, and returned to the United States for safety around January 2020." Id.

According to Petitioner, Immigrations and Customs Enforcement (ICE) "apprehended [Petitioner] in front of his home in San Mateo, California on July 6, 2021," and three days later, "Petitioner was released from U.S. Marshals Service custody on a $10,000 bail and an order regarding conditions of release and appearance." Id. at 10. Petitioner contends that from 2020 to 2025, he complied with the conditions of his release and was living with his mother who is a lawful permeant resident, working, "attending church and school, and undergoing laser treatment to remove his gang tattoos." Id. Petitioner cites twenty-one letters of support from members of his church, family and work which attest to Petitioner being hardworking, committed to personal growth, and a strong member of his community. See id. at 11.

/ / /

/ / /

Petitioner was re-detained by ICE on March 16, 2025, without "any notice, hearing, or evidence of materially changed circumstances since his last release from government custody." Id. at 12. Petitioner was provided a custody redetermination hearing on September 29, 2025, wherein the immigration judge, in his oral decision, "stated that he was denying bond based on danger and did not need to reach the issue of flight, even though he previously stated on the record that the Petitioner was not a flight risk." Id. at 13.

Petitioner argues that his detention violates his due process rights because he was detained absent notice and an opportunity to be heard and he has a strong interest in his continued release. See id. at 28-33. Petitioner asserts his detention additionally violates "the constitutional period" that is reasonable under Zadvydas because "there is no evidence that Respondents will effectuate Petitioner's removal in the foreseeable future," in part due to Petitioner's appellate proceedings "before the BIA and before the Ninth Circuit—both of which are expected to take months, if not years, to resolve." Id. at 34. Further, Petitioner contends that "ICE was fully aware that Petitioner was in the country between 2021 and 2025 and that he was pursuing a petition for U status," and Petitioner resided at the same address where he was detained in 2021. See id. at 35. Petitioner asserts that his custody determination hearing "violated due process and the INA by denying bond to the Petitioner based on dangerousness." Id. Petitioner argues that removal to a third country is unlawful absent "constitutionally-compliant notice and an opportunity to respond and contest that removal if he has a fear of persecution or torture in that country." Id. at 55.

Respondents argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) because Petitioner is subject to a final order of removal which was reinstated on March 16, 2025. See ECF No. 15, pg. 5. Respondents argue that Petitioner cannot establish that "there is no significant likelihood of removal in the reasonably foreseeable future," necessary for relief under Zadvydas. See id. Respondents rebut Petitioner's claim, asserting that "Petitioner has been successfully removed to El Salvador in the past; thus, at this time, there is no need for the government to identify an alternate country for removal." Id. Thus, Respondents contend that, despite the fact that Petitioner has been detained for over fourteen months, the duration of that detention alone "… is insufficient to demonstrate a good reason to believe that the government

3

will be unable to remove Petitioner at the conclusion of his appeal." Id. Finally, Respondents argue that Petitioner was provided "constitutional and statutory protections in the form of a bond hearing under Aleman-Gonzalez v. Barr, 955 F.3d 762 (9th Cir. 2020), on September 29, 2025." Id. at 6 (citing ECF No. 15-1, pgs. 78-80). Thus, Respondents contend that "[t]he procedural process provided to Petitioner is constitutionally adequate under the circumstances." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 332 (1976)). Respondents argue that Petitioner has "a lesser liberty interest because he is subject to a final removal order . . . [u]nder the existing procedures, noncitizens face little risk of erroneous deprivation . . . [and] government has a strong interest in effectuating a final removal order." Id. at 7. Thus, Respondents argue the petition should be denied.

In reply, Petitioner argues that Respondents "do not provide a justification for the Department of Homeland Security ("DHS") re-detaining Petitioner after allowing him to live in the community for nearly four years, and they do not allege that any changed circumstances occurred warranting his arrest." ECF No. 17, pgs. 2-3. Petitioner contends that he was entitled to a pre-deprivation hearing prior to re-detention and Petitioner's liberty interest is not lessened by his final removal order. See id. at 3. Petitioner asserts that Respondents' argument that there is little risk of erroneous deprivation because Petitioner's detention is authorized by 1231(a)(6) is incorrect because the statute "'allows for the *continued* detention, not re-detention . . .'" Id. at 3-4 (quoting Vardan K. v. Warden of the Cal. City Det. Ctr., No. 1:26-cv-01128-TLN-CSK, 2026 U.S. Dist. LEXIS 54273, at *6 (E.D. Cal. Mar. 13, 2026) (citing Zadvydas v. Davis, 533 U.S. 678, 683 (2001)).

Petitioner argues that his removal order was reinstated July 7, 2021, not March 16, 2025, as Respondents assert. See id. at 4. Petitioner cites the notice of intent/decision to reinstate prior order provided by Respondents in support of this argument. See id. (citing ECF No. 15-1, pg. 55). Petitioner contends that the risk of erroneous deprivation is high, as demonstrated by the fact that he was detained for six months before he was provided any bond hearing. See id. Further, Petitioner contends that the government's interest in detained Petitioner without a bond hearing and burden to the government to provide such hearing prior to re-detention "imposes a

4

minimal burden on the government compared to the high costs of detention." Id. at 5 (citing Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1177 (E.D. Cal. 2025)(internal citations omitted).

Next, Petitioner argues that his removal is not reasonably foreseeable in the future because "[a]s this and other courts have found, removal is not reasonably foreseeable where a petitioner has been detained over six months, is still pursuing relief from removal, and their appeal may take months or years to resolve." Id. at 6 (citing Varela v. Warden, No. 1:26-cv-1869-DJCCKD P, 2026 U.S. Dist. LEXIS 94579, at *7 (E.D. Cal. Apr. 28, 2026); Rodriguez v. Warden, No. 1:26-cv-00694-DAD-CKD, 2026 U.S. Dist. LEXIS 57186, at *6 (E.D. Cal. Mar. 18, 2026) (internal citations omitted)). Petitioner argues that he "has a pending meritorious appeal before the Board of Immigration Appeals . . . [and] a separate petition for review before the Ninth Circuit Court of Appeals currently held in abeyance . . . The decisions on these appeals could take months or years and will not necessarily result in a final resolution of Petitioner's case." Id. at 7. Further, "Petitioner also has an application for U Nonimmigrant Status pending since 2022, which, if granted, would automatically cancel any prior order of removal entered by the DHS and allow Petitioner to seek cancellation of a removal order entered by the Immigration Judge or the BIA as well." Id.

Petitioner additionally argues his detention hearing was constitutionally inadequate and "Petitioner is vulnerable to removal to a third country under the DHS's recent practices." Id. at 9. Thus, Petitioner seeks "an injunction preventing his removal to a third country without notice and process." Id. at 10.

## II. DISCUSSION

The undersigned finds Petitioner is entitled to relief as his detention has exceeded six months and Petitioner has shown there no significant likelihood of his removal in the reasonably foreseeable future, which Respondents do not successfully rebut. Further, the undersigned finds that the revocation of Petitioner's release is governed by 8 C.F.R. § 241.13(i) and because Respondents failed to adhere to the process prescribed, Petitioner's rights were

violated and he is entitled to immediate release. In light of these findings and recommendations, the undersigned finds it is not necessary to address Petitioner's claim that his detention hearing was constitutionally inadequate.

**A.** ***Zadvydas* Claim**

When the Government wants to remove a noncitizen,[1] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General." §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

---

[1] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

Here, parties agree Petitioner has been detained since March 16, 2025, over one year. Petitioner argues there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future because of Petitioner's pending appeals and application for U Nonimmigrant Status which may take years to resolve. See ECF Nos. 14 and 17. Upon these facts, which Respondents do not challenge, the undersigned finds Petitioner has made the necessary showing for the burden to shift to Respondents to rebut such showing. Respondents attempt to rebut this showing by arguing that Petitioner has been removed to El Salvador in the past and Petitioner's prolonged detention itself "is insufficient to demonstrate a good reason to believe that the government will be unable to remove Petitioner at the conclusion of his appeal." ECF No. 15, pg. 5.

The undersigned finds that Respondents' have failed to rebut Petitioner's showing in accordance with the undersigned's finding and recommendations in A.A.M. v. Andrews, See A.A.M. v. Andrews, No. 1:25-CV-01514-DC-DMC (HC), 2026 U.S. Dist. LEXIS 89563 (E.D. Cal. Apr. 21, 2026). Respondents fail to provide specific facts relating to the likelihood of Petitioner's removal in the reasonably foreseeable future such as establishing that repatriations to El Salvador are routine or that El Salvador would accept Petitioner upon the conclusion of his appeals. Further, Respondents do not provide any approximate timeline for when Petitioner's appeals may be resolved nor estimate how much longer Petitioner may be detained for.

As the Supreme Court instructed in Zadvydas, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701.  The undersigned finds that Petitioner's detention already "exceeds a period reasonably necessary to secure removal," and "removal is not reasonably foreseeable" and therefore, Petitioner is entitled to relief. Thus, the undersigned will recommend that the petition be granted as to this claim.

B.    **Revocation of Release**

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1).

However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6).

The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes revocation of a noncitizen's release for violating conditions of release or purposes of removal, specifically:

> (1) **Violation of conditions of release**.  Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) **Revocation for removal**.  The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

8 C.F.R. § 241.13(i),

§ 241.13(i) additionally outlines the revocation procedure, which requires: "(1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *2 (C.D. Cal. Sept. 12, 2025) (citing § 241.13(i)(3); § 241.4(l)(2)).

"It is well-established that government agencies are required to follow their own regulations." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010)). In light of this, district courts have found it is appropriate to order the release of immigration detainees when it is determined that ICE violated their own policies when effectuating the detention of a noncitizen. See Hoac v.

8

Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)(ordering petitioner's release because "the record does not show" that ICE followed the requirements to revoke release as set forth in § 241.4); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) (finding petitioner's due process rights were violated when ICE failed to comply with § 241.4 when revoking petitioner's release due to violations of the conditions of release); Saeid Baniasadi v. Fereti Semaia, No. EDCV 26-01275-MWF(DSR), 2026 WL 851358 (C.D. Cal. Mar. 25, 2026)(ordering a petitioner's release upon finding petitioner is likely to succeed on his claim that the revocation of his release was not in accordance with § 241.4). When the government seeks to revoke the release of a noncitizen subject to § 1231 for removal, but fails to provide the process prescribed in  8 C.F.R. § 241.13(i)(3),  this Court has granted petitions, or afforded injunctive relief, ordering the immediate release of the noncitizen. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771 (E.D. Cal. July 16, 2025); Vuong v. Becerra, 1:25-cv-01847-DC-CSK, 2025 WL 3707172 (E.D. Cal. Dec. 22, 2025).

As a preliminary matter, the undersigned declines to apply the Mathews test to determine whether Petitioner's due process rights were violated because the undersigned finds Petitioner's due process rights were violated when Respondents failed to adhere to the statutory procedures when revoking Petitioner's release.

Though Respondents contend that Petitioner's order of removal was reinstated on March 16, 2025, ECF No. 15, pg. 5, the documents provided by Respondents show the order of removal was reinstated on July 7, 2021, ECF No. 15-1, pgs. 50 and 55. Thus, the undersigned finds that Petitioner's order of removal was reinstated on July 7, 2021. The undersigned finds that Petitioner was released on an order of supervision following the reinstatement of Petitioner's order of removal and therefore, revocation of Petitioner's release is governed by 241.13(i). Respondents do not allege they complied with § 241.13(i) when re-detaining Petitioner. Instead, Respondents argue that Petitioner's September 2025, custody determination hearing satisfies the process to which Petitioner is entitled. See ECF No. 15, pg. 6.

The undersigned finds that this hearing, provided almost six months after Petitioner was detained, does not does not comply with § 241.13(i)(3) as Petitioner was not "notified of the reasons for revocation of his or her release," as required by statute. Further, there is no evidence that Petitioner was provided "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). Accordingly, the undersigned will recommend the petition be granted as Respondents violated Petitioner's due process rights when they failed to provide Petitioner with the statutory requirements when revoking Petitioner's release. Upon finding Petitioner's detention violated the process prescribed in § 241.13(i), the undersigned will recommend that Petitioner be released immediately, on the same conditions of his prior release, and Respondents be enjoined from re-detaining Petitioner absent strict adherence to § 241.13(i).

### C. **Third Country Removal**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (citation omitted); see also Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

The Due Process Clause applies to noncitizens in the country in connection with removal proceedings, even if their presence is unlawful or temporary. See Zadvydas, 533 U.S. at 693; Andriasian v. Immigr. and Naturalization Servs., 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). This right to due process applies equally to the initial removal determination and determination of removal withholding relief to an identified third country. Johnson v. Guzman Chavez, 594 U.S. 523, 557

10

(2021) (Breyer, J., dissenting) ("[A]ll here agree that the aliens are legally entitled to seek [] withholding-only relief."); A.A.M., 2025 WL 3485219 at *11 ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator.").

Joining numerous other courts, and the District Judge's prior determination in this case, the undersigned finds that ICE's policy for third-country removals is incompatible with Ninth Circuit law and violates due process because it currently provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim. See Vishal v. Chestnut, No. 1:25-CV-01469-SAB-HC, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025) (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); Giebashvili v. Noem, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (same) (collecting cases); Nguyen, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy." (citing Andriasian, 180 F.3d at 1041; Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); A.A.M. v. Andrews, No. 1:25-CV-01514-DC-DMC (HC), 2025 WL 3485219, at *8 (E.D. Cal. Dec. 4, 2025) ("the court finds Petitioner has a protected liberty interest in having an immigration judge review USCIS's determination on his fear-based claim regarding removal to [a third country].").

The undersigned further finds that "the risk of removal without due process itself constitutes a concrete injury," Daneshfar v. Facility Adm'r, No. C25-1708 DGE MLP, 2025 WL 4037745, at *3 (W.D. Wash. Dec. 16, 2025); Esmail v. Noem, No. 2:25-cv-8325 WLH RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025), and that actual removal without notice or meaningful process is an injury that cannot be remedied once removal occurs, see Louangmilith v. Noem, 808 F. Supp. 3d 1139, 1145 (S.D. Cal. 2025) (once a noncitizen is removed without notice or opportunity to be heard "it will be too late for the individuals to meaningfully challenge the removal").

/ / /

/ / /

11

The undersigned finds that Petitioner is therefore entitled to relief on this ground and will recommend that Respondents be enjoined from removing Petitioner to a third country without first providing adequate notice and an opportunity to raise a fear of removal. Thus, the undersigned will recommend that Respondents be enjoined from removing Petitioner to a third country absent specific protections.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends and orders:

1. It is RECOMMENDED that the amended petition for writ of habeas corpus, ECF No. 14, be GRANTED;

2. It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner, JOHN DOE, on the same conditions as his prior release, with all Petitioner's documents and possessions;

3. It is RECOMMENDED that Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

4. It is RECOMMENED that Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, be enjoined from removing Petitioner via a third-country deportation to any country, without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal: A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country;

5. It is RECOMMENED that if Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.

/ / /

12

6.    It is RECOMMENDED that Respondents be ORDERED to file a notice of compliance within three (3) days of the District Judge's order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 30, 2026

_____

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13